**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

MATTHEW SKOGEN,

       **Plaintiff,**                          **Civil Action**

**v.**                                         **No. 08-2657-DJW**

**THE CITY OF OVERLAND PARK,**

       **Defendant.**

**MEMORANDUM AND ORDER**

Pending before the Court are the following motions: (1) Defendant's Motion for Judgment on the Pleadings (doc. 11); (2) Plaintiff's Motion for Summary Judgment (doc. 24); and (3) Defendant's Motion for Summary Judgment (doc. 26). For the reasons set forth below**,** the Court denies Defendant's Motion for Judgment on the Pleadings and Plaintiff's Motion for Summary Judgment but grants Defendant's Motion for Summary Judgment.

**I.**      **Nature of the Matter Before the Court and Background Information**

This is an action brought pursuant to 42 U.S.C. § 1983 regarding the termination of Plaintiff's employment as a police officer with the Overland Park, Kansas Police Department ("Police Department"). After the Police Department terminated Plaintiff's employment, Plaintiff appealed his termination to the Overland Park Civil Service Commission ("Civil Service

Commission" or "Commission").[1]  The Commission upheld the Police Chief's decision to terminate Plaintiff's employment.[2]

Plaintiff contends that he had a property interest in his continued employment with Defendant.  He further contends that Defendant deprived him of that property interest without due process of law.[3]  More specifically, Plaintiff claims he was deprived of due process because he did not receive a fair and impartial appeal hearing by the Civil Service Commission.[4]  He contends he was deprived of a fair and impartial hearing because the Civil Service Commission's Rules and Regulations required the Commission to apply a highly deferential standard of review to the Police Department's decision to terminate him.  That standard of review (1) required the Commission to uphold the Police Department's decision unless it found the decision was arbitrary and capricious or without reasonable cause, and (2) prohibited the Commission from substituting its independent judgment for that of the Police Department.[5]

This deferential standard of review was added through a January 24, 2008 amendment to the Civil Service Commission's Rules and Regulations.  Plaintiff was the first employee to file an appeal under the amended Rules and Regulations.  Thus, this is the first time a court has reviewed a due process claim  in connection with the Commission's new deferential standard of review.

---

[1]Pretrial Order (doc. 28), ¶ 4.a.

[2]*Id.*

[3]*Id*. ¶¶ 2, 5.a.

[4]*Id*. ¶ 6.a.

[5]*Id*. ¶ 6.b.

Plaintiff does not seek monetary damages. Rather, Plaintiff seeks "a remand to the Civil Service Commission for a hearing applying a standard of review that protects his due process rights."[6] He also seeks to recover his attorney's fees.[7]

Defendant has filed a Motion for Judgment on the Pleadings. Additionally, both parties have filed Motions for Summary Judgment. The Court will first consider the Motion for Judgment on the Pleadings.

## II. Defendant's Motion for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) governs motions for judgment on the pleadings. It provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."[8] A motion for judgment on the pleadings is analyzed under the same standard that applies to a Rule 12(b)(6) motion to dismiss.[9] Thus, a motion for judgment on the pleadings is decided based on a consideration of the plaintiff's complaint, and the court will review the facts alleged in the complaint to determine whether they are "enough to raise a right to relief above the speculative level."[10]

Plaintiff contends that Defendant's motion violates Rule 12(c) because Defendant has attached exhibits to its motion, which are "matters outside of the pleadings." He contends that the

---

[6]*Id.* ¶¶ 10, 11.

[7]*Id.* ¶ 10.

[8]Fed. R. Civ. P. 12(c).

[9]*Soc'y of Separationists v. Pleasant Grove City*, 416 F.3d 1239, 1241 (10th Cir. 2005).

[10]*Bean v. Norman*, No. 08-2422-JWL, 2010 WL 420057, at *2 (D. Kan. Jan. 29, 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)).

Court should disregard the exhibits and consider only the Complaint in ruling on Defendant's motion.

Rule 12(d) generally prohibits the court from considering matters outside the pleadings in ruling on a motion for judgment on the pleadings.[11] Under Rule 12(d), when a party presents matters "outside the pleadings" in support of a Rule 12(c) motion for judgment on the pleadings or a Rule 12(b)(6) motion to dismiss, and the court does not exclude them, "the motion must be treated as one for summary judgment under Rule 56."[12] The court must then give all parties "a reasonable opportunity to present all the material that is pertinent to the motion."[13] The court has discretion in determining whether to accept materials beyond the pleadings.[14]

In this case, Defendant has presented four exhibits in support of its motion for judgment on the pleadings. Plaintiff urges the Court to disregard these exhibits in ruling on Defendant's motion. The four exhibits are: (1) Overland Park Charter Ordinance No. 84 (Exhibit 1); (2) City of Overland Park Municipal Code §§ 2.66.1320 and 2.66.1330 (Exhibit 2); (3) Civil Service Commission Rules and Regulations (Exhibit 3); and (4) August 7, 2008 Appeal Decision of the Civil Service Commission (Exhibit 4). Thus, the Court must decide whether it should consider each of these four exhibits in ruling on the Motion for Judgment on the Pleadings, and if so, whether the motion should be converted to one for summary judgment.

It is well settled that a court may take judicial notice of municipal ordinances in ruling on a Rule 12(b)(6) motion to dismiss, and it may do so without converting the motion to a summary

---

[11]*Wolfson v. Nutt*, No. 08-3190-GLR, 2009 WL 2210096, at *2 (D. Kan. July 24, 2009).

[12]Fed. R. Civ. P. 12(d).

[13]*Id.*

[14]*Wolfson,* at *2 (citing *Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1341 (10th Cir. 2000)).

judgment motion.[15]  A court may also take judicial notice of agency rules and regulations without converting the motion to dismiss to one for summary judgment.[16]  Because the court must employ the same standard that it uses to analyze a Rule 12(b)(6) motion to dismiss to evaluate a Rule 12(c) motion for judgment on the pleadings[17] and because Rule 12(d) by its express terms applies to both motions to dismiss and motions for judgment on the pleadings, the Court concludes that it may take judicial notice of municipal ordinances and agency rules and regulations in ruling on a motion for judgment on the pleadings.  The Court may do so without converting the motion for judgment on the pleadings to one for summary judgment.

Accordingly, the Court is free to take judicial notice of Exhibits 1 and 2 (the Overland Park ordinances) and Exhibit 3 (the Civil Service Commission's Rules and Regulations) without converting the motion to one for summary judgment.  This is not true, however, with respect to Exhibit 4, the Civil Service Commission's August 26, 2008 Appeal Decision.  The decision is neither an ordinance nor regulation and therefore does not fall within the scope of the judicial notice exception for ordinances and administrative rules and regulations.  Arguably, it could fall within the

---

[15]*See, e.g.*, *Zimomra v. Alamo Rent-A-Car, Inc.*, 111 F.3d 1495, 1503-04 (10th Cir. 1997) (district court properly took judicial notice of  municipal ordinance in ruling on Rule 12(b)(6) motion to dismiss); *Jones v. Wildgen*, 320 F. Supp. 2d 1116, 1120 (D. Kan. 2004) (taking judicial notice of municipal ordinances in ruling on Rule 12(b)(6) motion to dismiss).  *See also Zimomra*, 111 F.3d at 1503 ("[A] federal court [may] take judicial notice of adjudicative facts at any stage of the proceedings . . . .").

[16]*Baxter v. Samples*, No. 08-cv-00620-CBS-KMT, 2009 WL 2242252, at *8 (D. Colo., July 22, 2009) (taking judicial notice of Bureau of Prison's administrative procedures in ruling on Rule 12(b)(6) motion to dismiss); *Muniz v. Kaspar*. No. 07-cv-01914-MSK-MJW, 2008 WL 3539270, at *3 (D. Colo. Aug. 12, 2008) (taking judicial notice of administrative regulation describing grievance process in ruling on Rule 12(b)(6) motion to dismiss).

[17]*See Soc'y of Separationists,* 416 F.3d at 1241.

judicial notice exception made for a document that is referred to in the plaintiff's complaint and that is central to the plaintiff's claims. To be subject to such judicial notice, however, "an indisputably authentic copy" of the document must be submitted by the moving party to the court.[18]

The Court cannot say that the copy of the Appeals Decision is "an indisputably authentic copy," and, thus, will consider it to be a "matter outside the pleadings." This requires the Court to convert Defendant's Motion for Judgment on the Pleadings to one for summary judgment.

In this case, however, the parties have already filed cross-motions for summary judgment. Those motions address the very same arguments that are raised in Defendant's Motion for Judgment on the Pleadings. In fact, both of the summary judgment motions refer the Court to various arguments and authorities the parties raised in the briefing on Defendant's Motion for Judgment on the Pleadings. Thus, the Court sees no need to convert the Motion for Judgment on the Pleadings to a motion for summary judgment that would be duplicative of the cross-motions for summary judgment. Instead, the Court will address the issues in the context of the parties' Cross- Motions for Summary Judgment. The Court therefore denies the Motion for Judgment on the Pleadings.

---

[18]*See GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997) (court may take judicial notice of document that is referred to in complaint but not attached to it that is central to the plaintiff's claims, but only if the party moving to dismiss submits "an indisputably authentic copy" of the document); *Rubio v. Turner Unified Sch. Dist. No. 202,* 453 F. Supp. 2d 1295, 1299, n.4 (D. Kan. 2006) (On motion to dismiss, "the Court may consider . . . indisputably authentic copies of documents if plaintiff referred to them in the complaint and the documents are central to the claims.").

## III.    Cross-Motions for Summary Judgment

### A.    Standard for Ruling on Cross-Motions for Summary Judgment

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[19]  In applying this standard, the court views the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the nonmoving party.[20]  This legal standard does not change where, as here, the parties file cross-motions for summary judgment.[21]  Each party has the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law.[22]  Where the parties file cross-motions for summary judgment, the court is "entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts."[23]  Cross-motions for summary judgment "are to be treated separately; the denial of one does not require the grant of another."[24]  To the extent the cross-motions overlap, however, the court may address the legal arguments together.[25]

---

[19]Fed. R. Civ. P. 56(c).

[20]*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[21]*Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

[22]*Id.*

[23]*Id.* (quoting *James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997)).

[24]*City of Shawnee, Kan. v. Argonaut Ins. Co.*, 546 F.Supp. 2d 1163, 1172 (D. Kan. 2008) (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979)).

[25]*See Hjersted Family Ltd. P'ship v. Hallauer*, No. 06-2229-CM, 2009 WL 902428, at *2 (D.
(continued...)

## B.	Brief Summary of the Issues and the Parties' Contentions

There is no dispute between the parties regarding any issues of material fact.  The Parties' do dispute, however, the application of the relevant § 1983 law to those facts.  More specifically, they dispute (1) whether Plaintiff had a property interest in his continued employment as a police officer with Defendant; and (2) whether Defendant afforded Plaintiff due process when it terminated Plaintiff's employment.

Plaintiff alleges that he had a property interest in his employment with Defendant "because by ordinance he can only be terminated for cause."[26]  He therefore contends that he was entitled to due process before his employment could be terminated.[27]  He further contends that "the amendment of the Civil Service Commission Rules and Regulations, adopted January 24, 2008 deprived him of due process."[28]  He alleges that the amendment to Rule F deprived him of his due process rights by (1) restricting the Commission's review to an arbitrary and capricious standard, and (2) and not permitting the Commission to substitute its judgment for that of the Police Department.[29]

Defendant, on the other hand, contends that Plaintiff did not have a property right in his continued employment and he was therefore not entitled to any due process considerations.[30]  Even assuming that Plaintiff did have a property interest and an entitlement to due process, Defendant

---

[25](...continued)
Kan. Mar. 31, 2009) (noting that court would address the arguments together, to the extent the motions and legal arguments overlapped).

[26]Pretrial Order, ¶ 5.a.

[27]*Id.*

[28]*Id.*

[29]*Id.*

[30]*Id.* ¶ 5.b.

contends he was afforded all process that he was due. Defendant maintains that "an arbitrary and capricious standard of review satisfies the requirements of the due process clause as a matter of law."[31] Even assuming further that the arbitrary and capricious standard does not satisfy due process, Defendant contends that Plaintiff received "adequate due process protection" through the combination of his pre-termination and post-termination procedures and that Plaintiff is therefore not entitled to any § 1983 relief.[32]

### C. Uncontroverted Facts

There is no dispute between the parties regarding any issues of material fact. Indeed, in each party's "Statement of Uncontroverted Facts," the parties "refer the Court to the Stipulated Facts submitted in the Pretrial Order and the stipulated documents and hearing transcripts that have been filed with the Court."[33] Thus, after reviewing the parties' Stipulated Facts,[34] the "stipulated documents,"[35] and the transcript of the Civil Service Commission Appeal Hearing,[36] the Court finds the following facts are uncontroverted and material to resolution of the summary judgment cross-motions.

---

[31]*Id.*

[32]*Id.*

[33]Pl.'s Mem. in Supp. of Mot. for Summ. J. (doc. 25) at 2; Def.'s Resp. to Pl.'s Mot. for Summ. J. and Mem. in Supp. of Def.'s Mot. for Summ. J. (doc. 26) at 4.

[34]Pretrial Order (doc. 28), ¶ 4.a.

[35]*See* Pl.'s Submission of Proceedings (Exs. A-1 & A-2 attached to doc. 1); Notice of Filing of Docs. (doc. 16); Case Facts Brief (doc. 20).

[36]*See* Hr'g Tr. (doc. 14).

Plaintiff was employed by the Defendant City of Overland Park for nineteen years as a police officer with the Overland Park Police Department.  On March 30, 2008, Plaintiff was involved in an off-duty incident (the "Incident") that a citizen reported to the Overland Park Police Department Officers from the Overland Park Police Department were called to the scene and completed an Incident/Investigation Report.  Plaintiff was suspended from his position with Defendant as a result of the Incident.

Subsequently, the Overland Park Police Department's Office of Professional Standards, Internal Affairs ("Internal Affairs"), conducted an investigation into the Incident ("Internal Affairs Investigation").  During that investigation, Internal Affairs Detectives interviewed Plaintiff on two different occasions.  They also interviewed various Police Department officers and other employees who had been called to the scene or were otherwise involved in the Incident.  They also interviewed two witnesses who had reported the events to the Police Department.  In addition, the Internal Affairs Detectives took statements from a number of the individuals they interviewed.[37]

Prior to being interviewed by the Internal Affairs Investigators, Plaintiff reviewed and signed a "Notice of Investigation," which stated that an investigation was being conducted into allegations of possible violations of City or Police Department work rules and regulations concerning "[a] physical disturbance that occurred at, and/or in the general vicinity of the Doubletree Hotel, 10100 College Blvd. on Sunday March 30, 2008, at approximately 0151 hours."[38]  The Notice informed Plaintiff that any statements he made during the investigation could be used against him in any

---

[37]*See* Case Facts Brief, Witness Statements (doc. 20-1, 20-2).

[38]*Id.*, Notice of Investigation (doc. 20-2).

disciplinary, administrative, or civil proceeding related to the scope of the investigation. During the April 10, 2008 interview of Plaintiff, which was video recorded, the investigators asked Plaintiff numerous questions about his involvement in the Incident. Among other things, Plaintiff was asked about comments attributed to him by others who were present during the Incident. On March 22, 2008, Internal Affairs interviewed Plaintiff a second time, in order to clarify several issues.[39]

After conducting their investigation, the Internal Affairs Detectives completed a lengthy written report ("Professional Standards Report"), which included an Incident Summary, Investigative Summary, Findings, Interview Reports, and Witness Statements.[40]

After completing the Professional Standards Report, the Internal Affairs Detectives met with counsel for Defendant and Plaintiffs' supervisors, Captain O'Neal, Major Ernst, and Lieutenant Colonel ("LTC") Jack Cauley. LTC Cauley was Deputy Chief of Police. Plaintiff's supervisors decided to recommendation termination. They provided their termination recommendation to the Chief of Police, John Douglass. Chief Douglass then met with LTC Cauley and the other Deputy Chiefs, and he gave LTC Cauley permission to proceed.

On May 15, 2008, LTC Cauley wrote a four-page letter to Plaintiff (with copies to the Police Chief and others in the Police Department), in which he informed Plaintiff that Plaintiff's Division Commander, Major Ernst, had recommended Plaintiff be terminated as a result of what the Internal Affairs Investigation revealed about his involvement in the Incident.[41] LTC Cauley's letter provided a detailed summary of the Incident and Plaintiff's involvement in it. LTC Cauley explained in his

---

[39]*Id.*, Investigative Report (doc. 20-3).

[40]*See id.*, Incident Summary, Investigative Summary, Findings, Interview reports, and Witness Statements (doc. 20-2).

[41]Notice of Filing of Docs., May 15, 2008 Letter from LTC Cauley to Plaintiff (doc. 16, attachment 1).

letter that Plaintiff's actions during the Incident "were unprofessional" and violated the following Police Department Standards of Conduct:

SOC 0100 - Code of Conduct
SOC 0110 - Chain of Command
SOC 0120 - Member's Conduct
SOC 0140 - Conduct Unbecoming a Member
SOC 0170 - Decision Making and Judgment
SOC 0200 - Honesty and Truthfulness.[42]

The Standards of Conduct comprise the written Code of Ethics for the officers of the Police Department.[43] The stated rationale of SOC 0100 is as follows: "Ethics is the foundation upon which our Department maintains its professional image, integrity, and community respect. All Members will adhere to the principles established in the Code of Ethics."[44]

LTC Cauley's letter explained in detail the way in which Plaintiff had allegedly violated each of the cited Standards of Conduct. For example, under the violation for SOC 0100 (Code of Conduct) and SOC 0140 (Conduct Unbecoming a Member), LTC Cauley wrote:

Motorists who observed your admitted confrontation with your brother regarding personal matters reported the activity to the OPPD [Overland Park Police Department] as a disturbance. When your fellow officers were dispatched to investigate the reported disturbance you were at best publicly belligerent, hostile and uncooperative with the officers. You publicly and repeatedly cursed at and used profanity toward a law enforcement officer. It was the opinion of Officer Couper that you were publicly aggressive with him to the point that he believed you were preparing to assault him. You also publicly stated that you had been a cop for twenty years and that you were not going to take any crap from Officer Couper who was engaged in his official duties. These actions violated SOC 0140 <u>Conduct Unbecoming A Member</u>, which specifically states that members on or off duty, shall not engage in any conduct or activities which discredits them or other Officers; which tends to bring the City or Department into disrepute; or, which otherwise impairs the City's or Department's efficient and effective operation. In addition, your actions not only

---

[42]*Id.*

[43]Case Facts Brief, Standards of Conduct (doc. 20-1).

[44]*Id.*, SOC 0100 (doc. 20-1).

discredit you and the department, your actions diminish the professional integrity, public trust and credibility of the department and your fellow officers. In addition, your actions violated SOC 100 Code of Conduct which requires members to be exemplary in obeying the law and the regulations of the department to prevent bringing discredit on yourself and the department. Your admitted intoxication in no way mitigates or excuses your intolerable behavior. I also want you to know that your conduct was not only unethical and unprofessional, in my opinion, your conduct toward Officer Couper was such that you were precariously close to being arrested for assault.[45]

LTC Cauley's letter informed Plaintiff that he was recommending Plaintiff's termination, as follows: "Subsequent to reviewing the Professional Standards investigatory report, available evidence, and the recommendation of your Division Commander to terminate your employment, I am recommending to the Chief of Police that your employment with the City be terminated for the reasons set forth in this correspondence."[46]

LTC Cauley concluded his letter by informing Plaintiff that he would be given the opportunity to meet with the Chief of Police. He stated:

Pursuant to Department Operational Rule 207 I have scheduled you to meet with the Chief of Police on Wednesday, May 21st, 2008, at 1400 hours. During this meeting you will be provided an opportunity to present all your oral or written defenses or explanations contesting my recommendation to terminate your employment.[47]

Prior to the May 21, 2008 meeting between Plaintiff and Chief Douglass, Plaintiff wrote a letter to the Chief Douglass, in which he responded to the recommended termination. Plaintiff stated, *inter alia*:

This, in all likelihood, I know is the last opportunity I will have to possibly change your affirmation of the recommended discipline imposed by your subordinates. . . . I can only assume at this point that due to the duration of the investigation and the

---

[45]Notice of filing of Docs., May 15, 2008 Letter from LTC Cauley to Plaintiff (doc. 16, attachment 1).

[46]*Id.*

[47]*Id.*

three weeks it took for a recommendation, coupled with the decision makers involved, the outcome is probably not in my favor.

. . . .

Although very remorseful for the comments I was responsible for that night, I do not feel anything occurred warranting termination. I felt I would get more than my fair share of suspension days coupled with an aggressive campaign to thwart any future binge drinking. I did not break any laws and was not assaultive the slightest. I was intoxicated and ran my mouth like an idiot. Hardly something I thought I would be terminated over. I was honest with the investigators and had hoped to have my opportunity to prove it with a polygraph. The witness had a lot of details mistaken, which no doubt exacerbated the incident. Officer Neff discredited the witnesses account with his passing of the polygraph.

. . . .

These events have caused a significant change in my lifestyle and I'm trying my hardest to better myself and prepare for what lies ahead. This has been a very humbling experience and I realize there is so much I took for granted.

I do know that if given a chance to continue my employment with the Overland Park Police Department, everyone will see a different Matt Skogen. My work record and use of sick leave speaks for itself. I value my family more than ever and will be the most loyal, hard working employee possible. I am not a liability to this department and will prove it.[48]

Chief Douglass met with Plaintiff on May 21, 2008. Prior to meeting with Plaintiff, Chief Douglass reviewed the Professional Standards Report. At the May 21st meeting, Plaintiff provided Chief Douglass with the letter described above. Chief Douglass gave Plaintiff the opportunity to speak on his own behalf. Plaintiff told Chief Douglass that although there were some things he felt he had done wrong, he wanted the Chief to know that: (1) he did not feel he had been untruthful and he believed that it was a result of a misunderstanding, and (2) while he recognized he might be subject to punishment, he felt that termination was too much. Chief Douglass told Plaintiff that he

---

[48]*Id.,* Letter from Plaintiff to Police Chief (doc. 16, attachment 2); Test. of Pl. at Civil Serv. Comm'n Appeals Hr'g, Tr. at 87 (doc. 14-1).

wanted to think about it further and that he would talk to the investigators about the truthfulness issue.[49]

Chief Douglass did speak to the investigators. He also reviewed the documentation again. He then decided to uphold LTC Cauley's termination recommendation.[50] On May 22, 2008, Chief Douglass wrote Plaintiff a letter to notify Plaintiff that his employment was terminated. The letter stated in pertinent part:

> As promised, I have reread your memorandum and researched your concerns, both in the file and through questioning investigators and staff involved. Consequently, I am upholding and affirming the recommendation . . . that your employment with the Overland Park Police Department be terminated effective Friday, May 23, 2008, at 1700 hours.[51]

### 2. Appeal of the termination decision

Plaintiff timely appealed his termination to the Civil Service Commission, pursuant to Overland Park Municipal Code (OPMC) 2.66.1330. The ordinance provides that any non-probationary police officer below the rank of Captain, may appeal his/her discharge or discipline to the Civil Service Commission "which shall fully hear and determine the matter in accordance with the rules and regulations promulgated by the Commission for the conduct of such hearings."[52] The ordinance further states, in relevant part:

> The Civil Service Commission shall have the power to enforce the attendance of witnesses, the production of books or papers and the power to administer oaths. The Commission shall have the authority, after a full and complete hearing on an appeal, to sustain or alter the disciplinary action; provided, it does not have the power to

---

[49]Test. of Police Chief John Douglass at Civil Serv. Comm'n Appeals Hr'g, Tr. at 55-57 (doc. 14-1).

[50]*Id.*

[51]Case Facts Brief, May 22, 2008 Letter from Chief Douglass to Plaintiff (doc. 20-1).

[52]OPMC § 2.66.1330.

enhance the disciplinary action. The decision of the Commission is binding upon such officer and the Police Department. Either party may appeal such decision to the district Court of Johnson County as provided by law.[53]

Rule E of the Civil Service Commission Rules and Regulations sets forth the hearing procedures. It provides as follows: The City and the appealing officer may be represented by counsel at the hearing. Each side provides an opening statement. The City presents it case, and the appealing officer (or his/her attorney) may question the City's witnesses. The appealing officer presents his/her case, and the City may question the officer's witnesses. Each party is then given the opportunity to make closing statements. The Commission recesses to deliberate the matter in executive session. The Commission then reconvenes in open session to announce its decision.[54]

Rule F of the Civil Service Commission Rules and Regulations requires that the Commission issue a "Report of Finding" after the hearing.[55] Rule F states that "[a]t the conclusion of each hearing, the Chairperson will prepare, sign and file a permanent written record of such hearing by the Civil Service Commission, including findings of fact, the Commission's decision, opinion or recommendation arising there from."[56]

Rule F also sets forth the standard under which the Commission must rule. It states:

The Commission may sustain or alter the disciplinary action; however, it does not have the power to enhance the disciplinary action. The Commission will not substitute its judgment regarding a disciplinary matter for that of the Police Department. The Commission will reverse or reduce a disciplinary action taken by the Police Department only if it finds that the action or decision was arbitrary or capricious or undertaken without reasonable cause. The Civil Service Commission

---

[53]*Id.*

[54]Notice of filing of Docs., Civil Serv. Comm'n Rules & Regs., Rule E (doc. 16, attachment 4).

[55]*Id.* Rule F.

[56]*Id.*

finding is final upon the delivery of the written finding to the Manager of Police Personnel.[57]

### 3. Plaintiff's hearing before the Civil Service Commission

A hearing regarding Plaintiff's termination was held before the Civil Service Commission on August 7, 2008.[58] Both Plaintiff and Defendant were represented by counsel. Plaintiff testified and presented one witness. Defendant presented three witnesses. Each party was given the opportunity to cross examine the opposing party's witnesses. Both sides were given the opportunity to give opening statements and closing arguments, although Plaintiff's counsel chose not to make an opening statement.

### 4. The Civil Service Commission's decision affirming the termination

On August 26, 2008, the Civil Service Commission issued a written decision (the "Decision") upholding Plaintiff's termination. The Decision stated in pertinent part:

D.      Based on the evidence offered, a majority of the members of the Civil Service Commission find that Matthew Skogen engaged in unprofessional and improper conduct while off-duty in his personal conduct in an incident that occurred on March 30, 2008, in Overland Park, Kansas and involved Officer Coupe[r].

E.      The Commission specifically finds that the conduct demonstrated by Matthew Skogen violated SOC 0140, *Conduct Unbecoming a Member* and SOC 0100, *Code of Conduct* and supports the action taken by the City to terminate Matthew Skogen from the Overland Park Police Department.

**Decision**

THEREFORE, it is the decision of the Civil Service Commission, after carefully considering the evidence and statements of counsel, that the action of Chief John M.

---

[57]*Id.*

[58]*See generally* Tr. of Civil Serv. Comm'n Appeal Hr'g (doc. 14-1).

Douglass dated May 22, 2008, affirming the recommendation to terminate Matthew Skogen from employment with the City of Overland Park is hereby sustained.[59]

5.    *The City of Overland Park and relevant municipal ordinances*

The City of Overland Park (the "City") is a municipality organized under Chapter 12 of the Kansas Statutes Annotated. In 2003, the City passed Charter Ordinance No. Eighty-Four. In Article I of that charter ordinance, the City, through the power vested in it by Article 12, Section 5 of the Kansas Constitution, elected to exempt itself from, and make inapplicable to it, the provisions of K.S.A. 12-1009 through 12-101, K.S.A. 12-1036a, and other statutory provisions not relevant to this case. Through Charter Ordinance No. Eighty-Four, the City adopted a "Mayor-Council-City Manager form of government."

Article III, Section 3.2 of Charter Ordinance No. Eighty-Four sets forth the powers and duties of the Overland Park City Manager. It provides in pertinent part:

> The city manager shall have the authority to . . . discipline, lay off, suspend, discharge, or remove all heads of departments, and all subordinate officers and employees of the city. . . . Provided that, the city manager may delegate at his or her discretion such authority to . . . discipline, lay off, suspend, discharge or remove subordinate officers and employees of the city to department directors and division heads.[60]

Article IV of Charter Ordinance No. Eighty Four provides for a Civil Service Commission that "shall have the jurisdiction, powers, duties and responsibilities as set forth in the ordinary ordinances of the city."[61]

---

[59]Civil Serv. Comm'n Decision, Plaintiff's Submission of Proceedings, Attachment to Ex. A-2 (doc. 1-2).

[60]Charter Ordinance No. Eighty-Four, Art. III, § 3.2.

[61]*Id.* Art. IV.

### D. General Legal Framework

Section 1983 protects citizens against the deprivation of rights that are secured by the Constitution or laws of the United States by entities acting under the color of state law,[62] including rights secured by the Due Process Clause of the Fourteenth Amendment.[63] The Due Process Clause prohibits a state from depriving a person of a property interest without due process of law.[64] To determine whether an individual was denied procedural due process, courts must engage in a two-step inquiry: "(1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process."[65] Thus, to establish a violation of due process rights, a plaintiff must first show that he/she had a protected property interest.[66] Then, and only then, will the court assess whether the plaintiff received the level of process to which he/she was entitled to protect that property interest.[67]

### E. Did Plaintiff Have a Property Interest in His Employment?

#### 1. The applicable law

To establish a property interest in public employment, a plaintiff must have had "a legitimate claim of entitlement" to continued employment and not merely a "unilateral expectation"

---

[62]*Maine v. Thiboutot*, 448 U.S. 1, 4 (1980).

[63]*Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

[64]*Potts v. Davis County*, 551 F.3d 1188, 1192 (10th Cir. 2009) (citing *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000).

[65]*Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009) (quoting *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004)).

[66]*Potts*, 551 F.3d at 1192 (citing *Hyde Park,* 226 F.3d. at 1210).

[67]*Riggins*, 572 F.3d at 1108.

of such employment.[68]  Property interests protected by the Due Process Clause "are created and their

dimensions are defined by existing rules or understandings that stem from an independent source

such as state law."[69]  Accordingly, the Supreme Court has held that a property interest in

employment may be created by a statute, ordinance, or express or implied contract; however, "the

sufficiency of the claim of entitlement must be decided by reference to state law."[70]

In light of the above, this Court must look to Kansas law to determine whether Plaintiff had

a property right to continued employment with the Police Department.  In doing so, the Court must

keep in mind that its role "is limited to ascertaining and applying the proper state law [of Kansas]

. . . . with the goal of insuring that the result obtained is the one that would have been reached in the

state courts."[71]

In *Farthing v. City of Shawnee, Kansas*,[72] the Tenth Circuit extensively reviewed Kansas law

regarding public employment in the context of a procedural due process analysis.  The Tenth Circuit

---

[68]*Potts*, 551 F.3d at 1193.

[69]*Roth*, 408 U.S. at 577.

[70]*Bishop v. Wood*, 426 U.S. 341, 344 (1976).  *See also Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192,1209 (10th Cir. 2007) ("In general, we look to state law to determine whether a property interest in employment exists. Such an interest can arise from state statutes, regulations, municipal ordinances, university rules, and even express or implied contracts."); *Snyder v. City of Moab*, 354 F.3d 1179, 1189 (10th Cir. 2003) ("Property interests are not created by the Constitution, but arise from independent sources such as state statutes, local ordinances, established rules, or mutually explicit understandings."); *Kingsford v. Salt Lake City Sch. Dist.*, 247 F.3d 1123, 1128 (10th Cir. 2001) ("State law sources for property interests can include statutes, municipal charters or ordinances, and express or implied contracts.").

[71]*Farthing v. City of Shawnee, Kan.*, 39 F.3d 1131, 1136 (10th Cir. 1994) (internal quotations and citation omitted).

[72]*Id.*

held that "under Kansas law, public employment is presumptively at-will."[73]  It further stated that "[i]n the absence of any evidence to the contrary, a public employee terminable at-will does not possess a protected property interest under Kansas law for purposes of procedural due process analysis."[74]  It recognized, however, that in those situations where Kansas law "restricts a government employer's removal power by requiring some type of 'cause' or 'fault' before taking any adverse action against the employee, then the Kansas Supreme Court has declared the employee does possess a protected property interest."[75]

### 2. Analysis

In light of the above, whether Plaintiff has a protected property interest will turn on whether Plaintiff was terminable only for cause.  To prevail on his due process claim, Plaintiff must be able to point to some state law, city ordinance, or implied or express contract that required his termination be for cause.

Plaintiff contends that the Overland Park Municipal Code ("Municipal Code" or "OPMC") provides the basis for his property interest in continued employment with Defendant.  More specifically, Plaintiff contends that he had a property right created by section 2.66.1320 of the Municipal Code.  That section, which is entitled "Disciplinary Suspension, Demotion and Termination" provides in relevant part:

> No police officer below the rank of Captain who has successfully completed the probationary period shall be suspended, demoted or terminated for disciplinary

---

[73]*Id.*

[74]*Id.*

[75]*Id.* (citing *Kosik v. Cloud County Cmty. Coll.*, 250 Kan. 507, 827 P.2d 59, 63 (1992) (citing Kansas Supreme Court cases)).  In *Kosik*, the Kansas Supreme Court observed that "[i]n Kansas, a public employee who may be discharged only 'for cause' has a property interest in continued employment."  250 Kan. at 512 (citing *Gorham v. Kan. City*, 225 Kan. 369, 590 P.2d 1051 (1979)).

reasons, except for misconduct, insubordination, failure to perform his or her required duties or disobedience of his or her orders or material false statements, deception or fraud (practiced or attempted) in the hiring process.[76]

In other words, the ordinance allows Defendant to terminate an employee such as Plaintiff *only* for the specific reasons set forth therein, i.e., misconduct, insubordination, failure to perform the required duties, disobedience of orders, or making material false statements or committing fraud or deception during the hiring process. Plaintiff argues that this ordinance meets the "termination for cause" standard, and, thus, gave him a property interest in his continued employment with the Police Department.

Defendant does not address Plaintiff's contention that he had a property interest based on OPMC § 2.66.1320. Instead, Defendant focuses its arguments on Plaintiff's lack of an express or implied employment contract and Charter Ordinance No. Eighty- Four. Defendant argues as follows: Public employees such as Plaintiff are employed at will. The Kansas employment at-will doctrine can be abrogated only by a written or implied contract. Defendant has adopted the Mayor-Council-City Manager form of government and enacted Charter Ordinance No. Eighty-Four. Under Article III, Section 3.2 of that Charter Ordinance, the Overland Park City Manager (or his designee) has "the authority to . . . discipline, lay off, suspend, discharge, or remove all heads of departments, and all subordinate officers and employees of the city."[77] Nothing in that Charter Ordinance restricts the City Manager's authority to terminate an employee and nothing gives the City Manager the power to enter into an express or implied contract of employment on behalf of the city. Defendant

---

[76]OPMC § 2.66.1320.

[77]Charter Ordinance No. Eighty-Four, Art. III, § 3.2.

cites two cases, *Dozier v. City of Overland Park, Kansas*[78] and *Riddle v. City of Ottawa, Kan*sas,[79] in support of its argument that under Kansas law Defendant's city manager (or his/her designee) has the power to terminate employees without cause and lacks the authority to enter into any contract of employment. Relying on these cases, Defendant argues that Plaintiff could be terminated without cause, and no alleged employment contract could change that. Thus, Defendant maintains that, as a matter of law, Plaintiff had no property interest in continued employment.

The Court is not persuaded by Defendant's arguments and finds them unavailing for several reasons. First, Defendant appears to misapprehend the basis for Plaintiff's property interest claim. Defendant appears to believe that Plaintiff's property interest is based on some type of implied contract. Plaintiff, however, makes no such argument. Indeed, in the Pretrial Order, Plaintiff makes it clear that he is relying on an ordinance and not an implied employment contract. He states: "Plaintiff contends that he has a property interest in his employment because *by ordinance* he can only be terminated for cause."[80] While he does not identify the specific ordinance in the Pretrial Order, in his briefing, Plaintiff identifies OPMC § 2.66.1320 as the basis for his claimed property interest.

In light of the above, any arguments about the existence of an employment contract and the City Manager's authority to enter into such a contract are irrelevant. What is relevant is whether OPMC § 2.66.1320 created a property interest in employment with Defendant. The Court will now examine that ordinance.

---

[78]No. 06-2169-JWL, 2006 WL 2177859 (D. Kan. July 31, 2006).

[79]12 Kan. App. 2d 714, 754 P.2d 465 (1988).

[80]Pretrial Order (doc. 28), ¶ 5.a (emphasis added).

As noted above, OPMC § 2.66.1320 sets forth the specific circumstances under which a police officer may be terminated. It provides:

> No police officer below the rank of Captain who has successfully completed the probationary period shall be suspended, demoted or terminated for disciplinary reasons, *except for misconduct, insubordination, failure to perform his or her required duties or disobedience of his or her orders or material false statements, deception or fraud (practiced or attempted) in the hiring process.*[81]

This ordinance clearly restricts the right of Defendant to terminate a police officer's employment by limiting the grounds for termination to misconduct, insubordination, failure to perform required duties, failure to obey orders, or making false statements or practicing or attempting fraud in the hiring process. The ordinance expressly states that no police officer (at least one below the rank of Captain who has successfully completed the probationary period) may be terminated except for one of the enumerated reasons. In other words, the police officer is assured continued employment absent cause for termination. Because this ordinance limits Defendant's discretion to terminate a police officer's employment except for cause, the Court holds it gives rise to a protected property interest.[82] Thus, the Court concludes that Plaintiff had a property interest in his continued employment with Defendant.

The *Riddle* and *Dozier* cases relied upon by Defendant do not compel a different conclusion. In *Riddle*, the defendant city operated under the city manager form of government. It was subject to K.S.A. 12-1014, which gave the city manager the power to "appoint and remove all heads of

---

[81]OPMC § 2.66.1320 (emphasis added).

[82]*See Farthing*, 39 F.3d at 1136 ("[W]here state law restricts a government employer's removal power by requiring some type of 'cause' or 'fault' before taking any adverse action against the employee, then the Kansas Supreme Court has declared the employee does possess a protected property interest."); *see also Teigen v. Renfrow*, 511 F.3d 1072, 1079 (10th Cir. 2007) ("This [statutory] provision limits the state's discretion to terminate Plaintiffs' employment except for cause, and, thus, gives rise to a protected property interest.").

departments, and all subordinate officers and employees of the city."[83]  The Kansas Court of Appeals held that under that statute, no restriction was placed on the city manager's power to suspend or remove an employee from office.[84]  The court also noted that the city was subject to an ordinance, Ottawa City Code § 2-204, which mirrored K.S.A. 12-1014.  Thus, nothing in that ordinance restricted the city manager's power to suspend or remove the plaintiff public safety officer from office.[85]

The *Riddle* court rejected the plaintiff's argument that he had a property interest based on a city personnel rule that he could only be disciplined for cause, because the plaintiff had failed to include a copy of the rule on appeal.[86]  The court noted, however, that even if he had included a copy of the rule, it would have declined to find that the rule overrode the clear provisions of K.S.A. 12-1014 or Ottawa City Code § 2-204.[87]  The court ultimately held that the plaintiff had no property right in his job because "[h]e cannot point to any state statute, *city code*, or contract which addresses the duration of his employment or the criteria for his suspension."[88]  Thus, the plaintiff was employed at will and had no property interest in his employment with the defendant city.[89]

The instant case is clearly distinguishable from *Riddle*.  Unlike the plaintiff in *Riddle*, Plaintiff in this case can point to a city code that sets forth the criteria for his termination.  OPMC

---

[83]*Riddle*, 12 Kan. App. 2d at 717.

[84]*Id*. at 718.

[85]*Id*.

[86]*Id*.

[87]*Id*.

[88]*Id*.

[89]*Id*.

§ 2.66.1320 unequivocally sets forth the specific grounds for which a police office like Plaintiff may be terminated. Thus, *Riddle* does not preclude Plaintiff from possessing a property interest in his continued employment with Defendant.

The Court also finds *Dozier* distinguishable. In *Dozier*, the Overland Park employee based his property interest on an implied contract that allegedly arose from the city's employee handbook.[90] Judge Lungstrum examined K.S.A. 12-1014 (the same statute at issue in *Riddle*), along with Overland Park Charter Ordinance No. Eighty-Four (the same ordinance present in the instant case), and observed that the city manager had the power to remove employees without cause.[91] Judge Lungstrum held that the city manager's power "cannot be abridged by contract, implied or written, because the city manager lacks the authority to enter into a contract of employment for a specific term."[92] Thus, he held that the plaintiff did not have a property interest in his employment with the city.

In contrast, in this case, Plaintiff does not base his property interest on an implied contract. Rather, Plaintiff bases his property interest on OPMC § 2.66.1320, which expressly limits the reasons for which the city manager may terminate a police officer's employment. The plaintiff in *Dozier* never argued that OPMC § 2.66.1320, or for that matter, any other Overland Park ordinance, limited the reasons for which he could be terminated.[93] Thus, *Dozier*, does not preclude Plaintiff from possessing a property interest in his continued employment with Defendant.

---

[90] 2006 WL 2177859, at *3.

[91] *Id*. at 4-5.

[92] *Id*. at 5.

[93] The plaintiff in *Dozier* was a code enforcement specialist, and, thus, he was not subject to OPMC § 2.66.1320, which by its express terms applies only to police officers.

In light of the above, the Court holds that Plaintiff had a property interest in his continued employment as a police officer with Defendant, based on OPMC § 2.66.1320.

### F.    Was Plaintiff Deprived of Due Process?

Having properly asserted a protected property interest, Plaintiff must now show that he was denied the appropriate level of due process. Plaintiff's constitutional challenge focuses on the post-termination process he received, i.e., his appeal to the Civil Service Commission.[94] He contends that the appeal did not afford him adequate process because the judicial tribunal, i.e., the Civil Service Commission, was not fair and impartial. More specifically, he asserts the Commission was not impartial because the Commission's Rules and Regulations required that it apply an "arbitrary and capricious standard of review" and did not allow the Commission to substitutes its independent judgment for that of the Police Department.[95] Plaintiff contends that this "is the antithesis of a fair and impartial tribunal."[96] He asserts that this deficiency in his post-termination process was fatal in light of the minimal due process he received in his pre-termination proceeding, where he was not given the opportunity to present evidence or confront his accusers.

Defendant, on the other hand, maintains that Plaintiff's post-termination proceeding "more than fulfilled even the most elaborate process or procedure to which Plaintiff could have conceivably

---

[94]*See* Pretrial Order (doc. 28), ¶ 5.a. ("Plaintiff claims that his due process rights were denied when the Rules and Regulations of the Defendant's Civil Service Commission did not give him a fair and impartial hearing regarding his termination of employment."). The parties agree that Plaintiff was terminated effective May 23, 2008, and that the Commission's hearing was held after he was terminated.

[95]*Id.* ¶ 6.b

[96]Pl.'s Mem. in Supp. of Mot. for Summ. J. (doc. 25) at 10.

been entitled."[97]  It contends that the Civil Service Commission was an impartial tribunal and that applying a deferential standard of review to the Police Department's decision did not make it a biased or unfair.  Defendant also maintains that Plaintiff received sufficient due process in his pre-termination proceeding because he received full notice of the charges against him and an opportunity to respond in a pre-termination dismissal hearing.  Thus, viewing the totality of the proceedings, the Court should conclude that Plaintiff received more than adequate due process.

       *1.*       *The applicable law*

The "essential principle" of due process is that a deprivation of life, liberty or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case."[98]  As a general rule, "[t]his principle requires 'some kind of a hearing' *prior* to the discharge of an employee who has a constitutionally protected property interest in his employment."[99]  The opportunity to be heard must occur "at a meaningful time and in a meaningful manner."[100]  This means, among other things, that the opportunity to be heard must occur before an impartial tribunal.[101]

Although Plaintiff focuses his constitutional challenge on the post-termination process he received, in order to evaluate the constitutionality of that post-termination process, this Court must

---

[97]Def.'s Resp. to Pl.'s Mot. for Summ. J. and Mem. in Supp. of Def.'s Mot. for Summ. J. (doc. 26) at 17.

[98]*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citation omitted).

[99]*Id.* (emphasis added) (citation omitted).

[100]*Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citations omitted).

[101]*Montgomery v. City of Ardmore*, 365 F.3d 926, 936 (10th Cir. 2004) (citing *Langley v. Adams County*, 987 F.2d 1473, 1480 (10th Cir. 1993)).

view it "in light of the pre-termination procedures it follows."[102]  Thus, although the parties concentrate their arguments on the process Plaintiff received in his appeal to the Civil Service Commission, the Court must examine *both* the pre-termination and post-termination process and determine, under the totality of those proceedings, whether Plaintiff received due process.  Before beginning that analysis, however, the Court will discuss the legal requirements for both pre-termination and post-termination due process and how they interrelate with each other.

With respect to a public employee's pre-termination proceeding, due process requires: "(1) oral or written notice to the employee of the charges against him; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee to present his side of the story."[103]  "[I]mplicit in the notice and opportunity to be heard elements is the requirement that the employee be made aware that his employment is in jeopardy of termination."[104]

A pre-termination hearing, "though necessary, need not be elaborate."[105]  And, there is no requirement that a full evidentiary hearing be held.[106]  Instead, the employee "needs only to be given notice and an opportunity to respond."[107]  The Tenth Circuit has held that "informal proceedings"

---

[102]*Copelin-Brown v. New Mexico State Personnel Office*, 399 F.3d 1248, 1255 (10th Cir. 2005).  *Accord Loudermill*, 470 U.S. at 547, n.12 ("[T]he existence of post-termination procedures is relevant to the necessary scope of pretermination procedures.").

[103]*Riggins,* 572 F.3d at 1108 (citations and internal quotations omitted).

[104]*Calhoun v. Gaines*, 982 F.2d 1470, 1476 (10th Cir. 1992).

[105]*Loudermill*, 470 U.S. at 545-46.

[106]*Riggins,* 572 F.3d at 1108 (quoting *West v. Grand County*, 967 F.2d 362, 367 (10th Cir. 1992)).

[107]*Id.* (quoting *West*, 967 F.2d at 367).

can meet these requirements,[108] including "pretermination warnings and an opportunity for a face-to-face meeting with supervisors,"[109] and even "a limited conversation between an employee and his supervisor immediately prior to the employee's termination."[110] No elaborate hearing is required at this stage because the purpose of the pre-termination hearing is to be an "initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action."[111] To require more than notice and an opportunity to respond prior to termination "would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee."[112]

The Court now turns to the law regarding post-termination process. There are no bright line rules for the type of post-termination process a public employee must receive, because the post-termination process is evaluated in light of the pre-termination procedures it follows.[113] The Tenth Circuit has recognized, however, that "[w]here . . . the pre-termination process offers minimal opportunity for the employee to present her side of the case, the procedures in the post-termination hearing become much more important."[114] The converse is also true. "[W]hen the employee has had

---

[108]*Id.*

[109]*Id.* (citing *Seibert v. Univ. of Okla. Health Sci. Ctr.*, 867 F.2d 591, 598 (10th Cir. 1989)).

[110]*Id.* (citing *Powell v. Mikulecky*, 891 F.2d 1454, 1459 (10th Cir. 1989)).

[111]*Loudermill*, 470 U.S. at 545-46.

[112]*Id.* at 546.

[113]*See Copelin-Brown*, 399 F.3d at 1255.

[114]*Id.* (citing *Benavidez v. City of Albuquereque*, 101 F.3d 620, 626 (10th Cir. 1996)).

a meaningful opportunity to explain his position and challenge his dismissal in pre-termination proceedings, the importance of the procedures in the post-termination hearing is not as great."[115]

In deciding whether due process has been afforded through the totality of the pre- and post-termination proceedings, courts often apply the three-factor balancing test articulated by the Supreme Court in *Mathews v. Eldridge*.[116] Although *Mathews* involved the termination of social security disability benefits, the Tenth Circuit has held that the *Mathews* factors should be considered when assessing any type of procedural due process claim,[117] including due process claims involving public employee terminations and suspensions.[118] The three *Mathews* factors are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[119]

Finally, the Tenth Circuit "ha[s] repeatedly emphasized the Supreme Court's admonition that the procedural due process analysis is not a technical conception with a fixed content unrelated to time, place and circumstances, but rather is flexible and calls for such procedural protections as the

---

[115]*Benavidez,* 101 F.3d at 626.

[116]424 U.S. 319, 334-35 (1976).

[117]*Ward v. Anderson*, 494 F.3d 929, 935 (10th Cir. 2007) ("When assessing a procedural due process claim, this court looks to the three-factor balancing test articulated by the Supreme Court in *Mathews v. Eldridge* . . . .").

[118]*See, e.g., Kirkland v. St. Vrain Valley Sch. Dist. No. Re-1J*, 464 F.3d 1182, 1192 (10th Cir. 2006) (applying balancing test to suspension of public school administrator and post-suspension grievance procedure); *Benavidez v. City of Albuquerque*, 101 F.3d 620, 626-27 (10th Cir. 1996) (applying balancing test to determine whether post-termination evidentiary hearing by defendant's Personnel Hearing Board satisfied public works employees' due process rights).

[119]*Mathews*, 424 U.S. at 335.

particular situation demands."[120]   The *Mathews* balancing test is therefore an important tool in helping the court decide whether, under the particular facts of the case, due process has been satisfied.

> 2.     *Analysis*

The Court will first address the adequacy of Plaintiff's pre-and post-termination proceedings. It will then apply the *Mathews* balancing test to determine whether the Civil Service Commission's deferential standard of review deprived Plaintiff of due process.

> a.     *Plaintiff's pre-termination proceedings*

The Court holds that Plaintiff received extensive due process prior to being terminated. Plaintiff's conduct in connection with the Incident was thoroughly investigated by Internal Affairs Detectives, who interviewed Plaintiff in depth on two occasions about his participation in the Incident.  Prior to being interviewed, Plaintiff was notified that an investigation was being conducted into allegations of possible violations of City or Police Department work rules and regulations in connection with the Incident.   Plaintiff was informed that any statements he made during the investigation could be used against him in any disciplinary, administrative, or civil proceeding related to the scope of the investigation.  In addition to asking Plaintiff questions about the Incident, the Detectives questioned him about comments attributed to him by others who were present during the Incident.  During the second interview, Plaintiff was questioned to clarify several issues.

Subsequently, Plaintiff received a four-page letter from LTC Cauley that provided a detailed summary of the results of the Internal Affairs Investigation.  The letter informed Plaintiff that his Division Commander had recommended his termination based on his involvement in the Incident,

---

[120]*Ward*, 494 F.3d at 935 (internal quotations and citations omitted).

as determined in the Internal Affairs Investigation. The letter also informed Plaintiff that LTC Cauley, after reviewing the Professional Standards Report and the recommendation of Plaintiff's Division Commander, was recommending Plaintiff's termination to the Chief of Police. In addition, LTC Cauley cited the specific Standards of Conduct that Plaintiff had violated, and he described the specific conduct that violated each standard. Finally, the letter informed Plaintiff that a meeting had been scheduled between Plaintiff and the Police Chief at which time Plaintiff would have "an opportunity to present all your oral or written defenses or explanations contesting" the termination recommendation.[121]

Plaintiff provided the Police Chief a letter in which he responded to the recommended termination. Plaintiff met with the Police Chief and was given the opportunity to provide his version of the facts and explain why he should not be terminated. After meeting with Plaintiff, the Police Chief spoke with the Internal Affairs investigators and reviewed the documentation again. He ultimately decided to terminate Plaintiff employment, effective the following day.

In sum, Plaintiff was apprised that he risked termination. He received detailed notice of the misconduct he was alleged to have committed and the specific standards of conduct he was alleged to have violated. He met twice with Internal Affairs Detectives and provided information to them about his conduct. He also met face to face with the ultimate decisionmaker and was allowed to give his version of the facts to the decisionmaker and to provide any written materials he wished to provide. While he was not given the opportunity to present his own witnesses or confront his accusers at that meeting, those individuals were interviewed during the Internal Affairs Investigation. In any event, due process does not mandate the opportunity to present witnesses or confront

---

[121]Notice of Filing of Docs., May 15, 2008 Letter from LTC Cauley to Plaintiff (doc. 16, attachment 1).

accusers in the pre-termination stage. The Court thus holds that Plaintiff received ample pre-termination due process, and rejects Plaintiff's argument that he did not receive adequate process prior to being terminated.

### b. Plaintiff's post-termination proceedings

The Court will now examine the post-termination proceedings. Plaintiff had a full evidentiary hearing before the Civil Service Commission. He was represented by an attorney who had the opportunity to make an opening statement (but chose not to do so) and who examined Plaintiff and Plaintiff's witness, cross-examined Defendant's witnesses, presented documents and other evidence through witnesses, and made a closing argument. Plaintiff also had the opportunity to testify on his own behalf. Finally, the Civil Service Commission made its own factual findings based on the evidence and witness testimony presented.

Typically, the Court would hold that such a post-termination proceeding satisfied due process, and when viewed in light of Plaintiff's pre-termination process, more than fulfilled Plaintiff's right to due process. The deferential standard of review imposed on the Civil Service Commission, however, makes this a unique case. As noted above, Plaintiff contends that this deferential standard of review prevented the Commission from acting as a fair and impartial tribunal.

### c. Impartial tribunal and deferential standard of review

The "[i]mpartiality of the tribunal is an essential element of due process."[122] Typically, claims that a tribunal lacks impartiality relate to a personal bias on the part of the tribunal or a member of the tribunal. A party claiming bias on the part of an administrative tribunal "must

---

[122]*Riggins,* 572 F.3d at 1112 (citing *Withrow v. Larkin,* 421 U.S. 35, 46-47 (1975)).

overcome a presumption of honesty and integrity in those serving as adjudicators."[123]  For example, bias may be implicated when a member of the tribunal has made prior statements that the employee should be terminated[124] or the tribunal member is prejudiced or has a financial stake in the outcome of the proceeding.[125]  Plaintiff in this case, however, does not allege any such *personal* bias.  Rather, he alleges that the *standard of review* that the Civil Service Commission was required to apply made its decision biased.

Thus, the issue this Court must decide is whether a terminated public employee who has received adequate notice and the opportunity to be heard is nevertheless deprived of due process where the tribunal hearing a post-termination appeal is required to defer to the initial termination decision unless it finds that decision was arbitrary or capricious or undertaken without reasonable cause.

Neither party has provided any federal case law that deals directly with this issue in the context of public employment, and the Court itself has been unable to locate any.  While Plaintiff relies heavily on *Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust for Southern California,*[126] the Court finds that case distinguishable.  *Concrete Pipe* addressed the due process rights of employers under the Multiemployer Pension Plan Amendments Acts ("MPPA") and examined 29 U.S.C. § 1401(a)(3)(A), which established a burden of proof for an arbitrator deciding issues between the employer and a pension trust.  The employer claimed, *inter*

---

[123]*Withrow,* 421 U.S. at 47.

[124]*See, e.g., McClure v. Indep. Sch. Dist. No. 16*, 228 F.3d 1205, 1215-16 (10th Cir. 2000).

[125]*See, e.g., Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Assoc.*, 426 U.S. 482, 491-92 (1976).

[126]508 U.S. 602 (1993).

*alia*, that the effect of the § 1401 presumptions was to deny the employer an impartial adjudicator, which was a denial of due process.[127]  The Court noted that if the employer was required to show that the trustee's *factual findings* were either unreasonable or clearly erroneous "there would be a substantial question of procedural fairness under the Due Process Clause."[128]  Because that statement is merely dicta and because *Concrete Pipe* deals with the MPPA, factual findings, and burden of proof, the Court does not find it helpful.

<em>d.  Application of the</em> Mathews <em>balancing test</em>

In the absence of any precedent directly on point, the Court will turn to the *Mathews* balancing test to determine whether Plaintiff received due process under the particular circumstances of this case.

<em>i.  Factor 1 — Employee's interest</em>

The first factor of the *Mathews* balancing test considers the importance of the private interest that is affected by the official action.[129]  This first factor favors Plaintiff, as he has a substantial interest in retaining his employment.  The Supreme Court has noted "the significance of the private interest in retaining employment" and "the severity of depriving a person of the means of livelihood."[130]  While a terminated employee may find employment elsewhere, doing so may well take considerable time and, in the case of police officer, any job search is likely to be burdened by the questionable circumstances under which the officer left his/her job.

---

[127]*Id*. at 605, 615-16.

[128]*Id*. at 626.

[129]*Mathews*, 424 U.S. at 335.

[130]*Loudermill*, 470 U.S. at 543.

The second *Mathews* factor has two components:  (1) the risk that the procedures used will erroneously deprive the employee of his property interest, and (2) the probable value of any additional or alternative procedural safeguards.[131]  Under this factor, the Court must decide whether the Civil Service Commission's deferential standard of review imposed a substantial risk of wrongfully depriving Plaintiff of his employment.  The Court finds that the deferential standard of review applied by the Civil Service Commission imposed a minimal risk of erroneously depriving Plaintiff of his employment.  The Court finds this to be the case for two reasons.

First, the Civil Service Commission conducted a full evidentiary hearing and undertook a complete *de novo* review of the facts.  Based on that evidentiary hearing—which involved attorneys for both Plaintiff and Defendant, opening and closing arguments, and the testimony of five witnesses (including Plaintiff) —the Commission made its own factual findings, without deferring to the Police Department's decision to terminate Plaintiff.  Most importantly, the Commission found that Plaintiff had "engaged in unprofessional and improper conduct while off-duty in his personal conduct in an incident that occurred on March 30, 2008, in Overland Park, Kansas and involved officer Coupe[r]."[132]  The Commission expressly held that "the conduct demonstrated by Matthew Skogen violated SOC 0140, *Conduct Unbecoming a Member* and SOC 0100, *Code of Conduct* and supports the actions taken by the City to terminate Matthew Skogen from the Overland Park Police

---

[131]*Mathews*, 424 U.S. at 335.

[132]Civil Serv. Comm'n Decision, Pl.'s Submission of Proceedings, Attachment to Ex. A-2 (doc. 1-2).

Department."[133]  As noted above, Deputy Chief of Police LTC Cauley had recommended to the Police Chief on May 15, 2008 that Plaintiff be terminated for violating those very same Standards of Conduct.  Thus, given that the Commission's own, independent factual findings were fully consistent with, and supported, the Police Department's findings, it appears highly unlikely that the Commission's decision to uphold the termination would have been any different had the Commission not applied a deferential standard of review.  In this respect, it appears that the procedures used by the Civil Service Commission did not erroneously deprive Plaintiff of his employment.

Second, the Court finds that the magnitude of the pre-termination process Plaintiff received minimized any risk of the Civil Service Commission erroneously depriving Plaintiff of his employment through its use of the deferential standard.  As discussed above, Plaintiff (1) knew he was the subject of an Internal Affairs investigation and was allowed to provide his version of the Incident to the Internal Affairs Detectives; (2) received notice from LTC Cauley of the alleged misconduct and specific violations of the Standards of Conduct that he was being charged with;  (3) met personally with the Chief of Police to explain his version of the Incident and to contest LTC Cauley's termination recommendation; and (4) provided a written statement/explanation to the Chief of Police, all prior to being terminated.  Had the Police Department's pre-termination procedures been cursory, Plaintiff would have a stronger argument that the Commission's deferential standard of review increased the risk of a an improper determination.  Here, however, Plaintiff received extensive, pre-termination procedures.  Given the magnitude of those procedures, the Court

---

[133]*Id.*

concludes that the risk of the Commission erroneously depriving Plaintiff of his employment was minimized. The Court finds this consideration weighs in favor of Defendant.

The Court will now address the probable value of any additional or substitute procedural safeguards. Plaintiff does not address this prong of the second *Mathews* factor; however, the obvious substitute procedural safeguard would have been to permit the Civil Service Commission to draw its own conclusion as to whether Plaintiff should have been terminated. As discussed above, the Court finds it unlikely that this would have resulted in a different ruling from the Commission. Thus, the Court finds the probable value of this substitute or additional safeguard to be minimal.

### iii. *Factor 3 — Governmental interest*

The third factor is the government's interest, including any fiscal or administrative burdens that the additional or substitute procedural requirement would entail.[134] Clearly, Defendant has a significant interest in preserving the integrity of its police department and maintaining public trust in its police department. To this end, Defendant has a substantial and important interest in insuring that its police officers comply with the Police Department's Code of Ethics, i.e., Standards of Conduct. This governmental interest is as significant, if not more significant, than Plaintiff's interest in his continued employment. The first prong of this factor thus tips the scale slightly in favor of Defendant.

On the other hand, the additional burden to Defendant would be minimal, in terms of both time and money. Requiring the Civil Service Commission to use its own judgement in deciding whether Plaintiff's termination was proper, based on the Commission's *de novo* factual findings, would not impose a significant burden on the Commission. The Commission was already required

---

[134]*Mathews*, 424 U.S. at 335.

to hold a full evidentiary hearing with witnesses, exhibits, and the participation of the parties' counsel, and was required to make its own factual findings based on that hearing. It would not have imposed a significant burden on the Commission to make its own independent determination of whether Plaintiff's termination was warranted rather than merely deferring to the Police Department's decision. This prong of the third factor thus weighs in favor of Plaintiff.

<em>iv.</em>    <em>Balancing of the</em> Mathews <em>factors</em>

After considering all of these factors, the Court holds that the balance weighs in favor of Defendant. The outcome of the balancing test in this case ultimately turns on the extensive nature of the pre-termination process afforded Plaintiff and on the fact that the Civil Service Commission made its own, independent factual findings which were consistent with the Police Department's determination that Plaintiff had engaged in misconduct that violated important Police Department Standards of Conduct. The pre-termination process afforded Plaintiff notice of the charges against him and ample opportunity to present his version of the facts. Plaintiff also received an extensive post-termination evidentiary hearing before the Civil Service Commission. Given that the Commission made its own independent factual findings and that those findings were consistent with the Police Department's findings, means it was highly unlikely that the Commission's deferential standard of review resulted in an erroneous decision. Clearly, the Commission acted not as a mere "rubber stamp" of the Police Department's actions but as a fair and impartial tribunal. The Court therefore finds that the hearing before the Civil Service Commission gave Plaintiff a meaningful opportunity to challenge his employer's decision to terminate him. Accordingly, the Court concludes that the Civil Service Commission's application of a deferential standard of review did not deprive Plaintiff of his due process rights.

### G.    Conclusion

Plaintiff had a property interest in his continued employment as a police officer with Defendant, by virtue of OPMC § 2.66.1320, which provides that non-probationary police officers like Plaintiff may only be terminated for the reasons enumerated therein.  Because Plaintiff had a property interest in his continued employment, Plaintiff was entitled to due process when he was terminated.    Plaintiff received pre-termination and post-termination procedures that satisfied his right to be heard at a meaningful time and in a meaningful manner.  He received full notice of the charges against him and an opportunity to respond in both of the proceedings.  That the Civil Service Commission was required to apply a deferential standard of review to the Police Department's decision to terminate Plaintiff and that it was not allowed to substitute its independent judgment for that of the Police Department did not make the Commission a biased tribunal nor did it deprive Plaintiff of his due process rights.  Plaintiff has failed to show that he was deprived of due process.

In sum, the Court holds that Plaintiff received all process that was due.  Accordingly, the Court will enter summary judgment in favor of Defendant and against Plaintiff.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (doc. 26) is granted.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (doc. 24) is denied.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Judgment on the Pleadings (doc. 11) is denied.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 15th day of March 2010.


                                        s/ David J. Waxse
                                        David J. Waxse
                                        U. S. Magistrate Judge


cc:     All counsel and *pro se* parties